# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | | |
|---|---|---|
| Gene Reed Enterprises, Inc., | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No.: 2:14-cv-2977-PMD |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| Avjet Corporation, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court on cross-motions for partial summary judgment filed by Plaintiff (ECF No. 32) and Defendant (ECF No. 33). For the reasons set forth herein, both motions are denied.

## BACKGROUND

This action arises out of a contract dispute between the parties over payments allegedly due under their agreement. On December 21, 2009, the parties entered into an aircraft management agreement and side letter[1] concerning the operation and maintenance of Plaintiff's Gulfstream G450 aircraft. On February 5, 2010, the parties entered into another aircraft management agreement and side letter, this time concerning the operation and maintenance of Plaintiff's Gulfstream G200 aircraft. In the 2009 and 2010 agreements and side letters, Defendant agreed to perform certain management services for Plaintiff's G200 and G450 aircraft. In exchange for the management services, Plaintiff agreed to pay a monthly administrative fee of $7,000 for the G450 and $6,000 for the G200 and to reimburse Defendant for costs incurred in performing the management services.

---

1. The parties used side letters to delineate items not specified in the aircraft management agreements.

The agreements also specified that Plaintiff would lease the aircraft to Defendant for Defendant's own use and for the use of Defendant's clients. In return, Defendant agreed to pay Plaintiff an hourly rate specified in the side letters. The agreements stated that Defendant would provide Plaintiff with regular billing statements and that Defendant's records would be maintained, and available for Plaintiff's review upon sufficient notice, for one year after the agreements terminated. Plaintiff sold the G450 on July 25, 2011, and terminated the 2010 agreement for the G200 on October 3, 2011.

## PROCEDURAL HISTORY

Plaintiff filed suit against Defendant on July 25, 2014, and filed the instant Motion for Partial Summary Judgment on August 26, 2015. Defendant then filed its Motion on September 14, along with its Response in Opposition to Plaintiff's Motion. Plaintiff filed its Reply on September 24, and its Response in Opposition to Defendant's Motion on October 1. Finally, Defendant filed its Reply on October 13. This matter is now ripe for consideration.

## LEGAL STANDARD

To grant a motion for summary judgment, a court must find that "there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). The judge is not to weigh the evidence but rather must determine if there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). All evidence should be viewed in the light most favorable to the nonmoving party. *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 124 (4th Cir. 1990). "[I]t is ultimately the nonmovant's burden to persuade [the court] that there is indeed a dispute of material fact. It must provide more than a scintilla of evidence—and not merely conclusory allegations or speculation—upon which a jury could properly find in its favor." *CoreTel Va., LLC v. Verizon Va., LLC*, 752 F.3d 364, 370 (4th Cir. 2014) (citations omitted). "[W]here the

2

record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate." *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1991). Summary judgment is not "a disfavored procedural shortcut," but an important mechanism for weeding out "claims and defenses [that] have no factual basis." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

When opposing parties file motions for summary judgment, the trial court applies the same standard of review to both motions. *See Northfield Ins. Co. v. Boxley*, 215 F. Supp. 2d 656, 657 (D. Md. 2002). "The role of the court is to 'rule on each party's motion on an individual and separate basis, determining, in each case, whether a judgment may be entered in accordance with the Rule 56 standard.'" *Id.* at 658 (quoting *Towne Mgmt. Corp. v. Hartford Acc. & Indem. Co.*, 627 F. Supp. 170, 172 (D. Md. 1985)); *see also Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1391 (Fed. Cir. 1987) ("[T]he court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration."). The mere fact that both parties seek summary judgment "does not 'establish that there is no issue of fact and require that summary judgment be granted to one side or another.'" *World-Wide Rights Ltd. P'ship v. Combe Inc.*, 955 F.2d 242, 244 (4th Cir. 1992) (quoting *Am. Fid. & Cas. Co. v. London & Edinburgh Ins. Co.*, 354 F.2d 214 (4th Cir. 1965)); *see also ITCO Corp. v. Michelin Tire Corp.*, 722 F.2d 42, 45 n.3 (4th Cir. 1983) ("The court is not permitted to *resolve* genuine issues of material facts on a motion for summary judgment—even where . . . both parties have filed cross motions for summary judgment."); *Lac Courte Oreilles Band of Lake Superior Chippewa Indians v. Voigt*, 700 F.2d 341, 349 (7th Cir. 1983) ("[C]ross-motions for summary judgment do not automatically empower the court to dispense with the determination whether questions of material fact exist."). Nevertheless,

dueling motions for summary judgment "may be probative of the nonexistence of a factual dispute," because "when both parties proceed on the same legal theory and rely on the same material facts the court is signaled that the case is ripe for summary judgment." *Shook v. United States*, 713 F.2d 662, 665 (11th Cir. 1983) (citing *Bricklayers, Masons & Plasterers Int'l Union v. Stuart Plastering Co.*, 512 F.2d 1017, 1023 (5th Cir. 1975)); *see also Nafco Oil & Gas, Inc. v. Appleman*, 380 F.2d 323, 325 (10th Cir. 1967) ("[B]y the filing of a [summary judgment] motion a party concedes that no issue of fact exists under the theory he is advancing, but he does not thereby so concede that no issues remain in the event his adversary's theory is adopted.").

## DISCUSSION

The parties have both moved for summary judgment as to Plaintiff's breach of contract claim. Per the terms of the parties' agreement, California contract law governs this dispute. "'The interpretation of contracts under California law involves a complex interplay of questions of fact and questions of law.'" *Whittlestone, Inc. v. Handi-Craft Co.*, No. C 08-04193 SBA, 2012 WL 3939629, at *5 (N.D. Cal. Sept. 10, 2012) (quoting *City of Santa Clara v. Watkins*, 984 F.2d 1008, 1012 (9th Cir. 1993)). "The threshold question in interpreting a contract or its provisions is 'whether the contested terms are ambiguous.'" *Id.* (quoting *City of Santa Clara*, 984 F.2d at 1012). "Whether a written contract is ambiguous is a question of law to be decided by the court." *Id.* (citing *Brobeck, Phleger & Harrison v. Telex Corp.*, 602 F.2d 866, 871 (9th Cir. 1979)). "A court can determine whether the contract is ambiguous on its face or by using extrinsic evidence of the parties' intent." *Id.* "If a contract is capable of two different reasonable interpretations, the contract is ambiguous." *Id.*; *see also Tanadgusix Corp. v. Huber*, 404 F.3d 1201, 1205 (9th Cir. 2005) (stating "[a] contract is ambiguous if reasonable people could find its terms susceptible to more than one interpretation."). "In contract cases, summary judgment is

4

appropriate only if the contract or the contract provision in question is unambiguous." *Whittlestone, Inc.*, 2012 WL 3939629, at *5 (citing *Nat'l Union Fire Ins. Co. v. Argonaut Ins. Co.*, 701 F.2d 95, 97 (9th Cir. 1983)); *see also Maffei v. N. Ins. Co. of N.Y.*, 12 F.3d 892, 898 (9th Cir. 1993) ("[D]iffering views of the intent of the parties will raise genuine issues of material fact . . . .").

At this Court's hearing on Defendant's Motion to Dismiss, the Court noted that arguably "there are two different readings to the contract." (Tr. Hr'g, ECF No. 28, at 15.) Having thoroughly reviewed the evidence in the record, the Court remains convinced that the parties' agreement is ambiguous as to whether Defendant owed Plaintiff any additional sums it charged its charter customers. The parties disagree about the meaning of several provisions. First, paragraph 4 of both aircraft management agreements states, "[Plaintiff] is leasing the Aircraft to [Defendant] for the purposes of having [Defendant] conduct charter and other . . . Operations." (Def.'s Mot. Summ. J., Ex. A, ECF No. 33-1, at 3.) Next, paragraph 4(c) of both agreements states that Defendant would "be solely responsible for billing and cooperating in obtaining payment from charter customers," and that "[a]ll sums due to [Plaintiff] for charters and received by [Defendant] are guaranteed by [Defendant] to [Plaintiff] . . . ." (*Id.*) Finally, in paragraph 9(a), the agreements state, "For [Defendant's] use of the Aircraft during the term and under the provisions of this Agreement, [Defendant] shall pay to [Plaintiff] rent (the "Rent") in the amount mutually agreed upon by [Defendant] and [Plaintiff]." (*Id.* at 6.)

According to Plaintiff, those provisions demonstrate that the parties intended for Defendant to use the aircraft for charters and for Defendant's own operations. As a result, Plaintiff asserts, the parties intended the rent provision to apply only when the aircraft were being used for Defendant's own operations and not when they were being used for third-party

charters. Thus, Plaintiff would be entitled to all sums remitted to Defendant for charter operations, even sums in excess of the agreed-upon rent. In contrast, Defendant asserts that the parties intended the rent provision to apply to both charter operations and its own operations. Accordingly, Defendant asserts, it is entitled to keep all sums earned in excess of the agreed-upon rent payments. Regrettably, the parties neglected to define "use," "Operations," or "charters," and each of the parties' interpretations is plausible. As a result, the Court finds the contract is ambiguous.

Next, Plaintiff asserts "[t]he agreements were drafted by [Defendant] and are to be construed against it as the drafter." (Pl.'s Mem. Supp. Mot. Partial Summ. J., ECF No. 32-1, at 7.) California law dictates that where "uncertainty [is] not removed by [the rules of construction], the language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist." Cal. Civ. Code § 1654. However, "when an agreement is arrived at by negotiating, the 'preparer' principle should not be applied against either party." *Dunne & Gaston v. Keitner*, 50 Cal. App. 3d 560, 563 n.3 (Cal. Ct. App. 1975) (citing *Indenco, Inc. v. Evans*, 201 Cal. App. 2d 369, 375 (Cal. Dist. Ct. App. 1962)). Defendant has provided an affidavit stating that Plaintiff's owner and sole shareholder was a sophisticated private aviation enthusiast and that the parties' agreements were created by negotiation as evidenced by revisions to the agreements. Accordingly, in light of the sophistication of the parties and the negotiations between them, the Court declines to construe the ambiguity in the agreement in Plaintiff's favor.

Plaintiff also contends that the Court may consider parol evidence to resolve the ambiguity, proffering a proposed draft agreement as evidence of the parties' intent. In California, the admission of parol evidence is a two-step process. *Hervey v. Mercury Cas. Co.*, 185 Cal. App. 4th 954, 961 (Cal. Ct. App. 2010). "'First, the court provisionally receives

6

(without actually admitting) all credible evidence concerning the parties' intentions to determine 'ambiguity,' i.e., whether the language is 'reasonably susceptible' to the interpretation urged by a party.'" *Supervalu, Inc. v. Wexford Underwriting Managers, Inc.*, 175 Cal. App. 4th 64, 73 (Cal. Ct. App. 2009) (quoting *Gen. Motors Corp. v. Super. Ct.*, 12 Cal. App. 4th 435, 441 (Cal. Ct. App. 1993)). "'If in light of the extrinsic evidence the court decides the language is "reasonably susceptible" to the interpretation urged, the extrinsic evidence is then admitted to aid the second step—interpreting the contract.'" *Id.* (quoting *Gen. Motors Corp.*, 12 Cal. App. 4th at 441).

As discussed above, the Court finds that the contract is reasonably susceptible to both Plaintiff and Defendant's interpretations. However, as also noted above, summary judgment is ordinarily inappropriate where there is an ambiguity in a contract. The Court expresses no opinion as to which interpretation of the contract is correct; rather, having determined that the contract is ambiguous, the Court must submit that question to the finder of fact. As a result, the Court declines to grant summary judgment to either party.

## CONCLUSION

For the foregoing reasons, it is **ORDERED** that Plaintiff's Motion for Partial Summary Judgment is **DENIED**. It is further **ORDERED** that Defendant's Motion for Summary Judgment is **DENIED**.

**AND IT IS SO ORDERED.**

*[signature]*
PATRICK MICHAEL DUFFY
United States District Judge

**December 17, 2015**
**Charleston, South Carolina**

7